**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LONDON DIVISION**
*Electronically Filed*

| | | |
|---|---|---|
| **DON ESTEP** | ) | **Civil Action No.** |
| **Plaintiff** | ) | |
| | ) | |
| | ) | |
| **-vs-** | ) | |
| | ) | |
| **WESLEY WOLFE** | ) | |
| Serve: | ) | |
| **London Police Department** | ) | **Complaint at Law** |
| **503 S. Main Street** | ) | |
| **London, Kentucky 40741** | ) | |
| | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **ELBERT RILEY** | ) | |
| Serve: | ) | **JURY DEMAND** |
| **London Police Department** | ) | |
| **503 S. Main Street** | ) | |
| **London, Kentucky 40741** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JORDAN CHILDERS** | ) | |
| Serve: | ) | |
| **London Police Department** | ) | |
| **503 S. Main Street** | ) | |
| **London, Kentucky 40741** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOHN INMAN** | ) | |
| Serve: | ) | |
| **London Police Department** | ) | |
| **503 S. Main Street** | ) | |
| **London, Kentucky 40741** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DYLAN MESSER** | ) | |
| Serve: | ) | |

**London Police Department**                )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )
**JAMES WILLIAMS**                           )
**Serve:**                                   )
**London Police Department**                 )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )
**NOAH RITCHIE**                             )
**Serve:**                                   )
**London Police Department**                 )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )
**TROY TRUETT**                              )
**Serve:**                                   )
**London Police Department**                 )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )
**ANDREW JACKSON**                           )
**Serve:**                                   )
**London Police Department**                 )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )
**JONATHAN JACKSON**                         )
**Serve:**                                   )
**London Police Department**                 )
**503 S. Main Street**                       )
**London, Kentucky 40741**                   )
                                             )
**and**                                      )
                                             )

2

| | |
|---|---|
| **JAMIE SLOAN** | ) |
| **Serve:** | ) |
| **London Police Department** | ) |
| **503 S. Main Street** | ) |
| **London, Kentucky 40741** | ) |
| | ) |
| **and** | ) |
| | ) |
| **RYAN JACKSON** | ) |
| **Serve:** | ) |
| **London Police Department** | ) |
| **503 S. Main Street** | ) |
| **London, Kentucky 40741** | ) |
| | ) |
| **and** | ) |
| | ) |
| **BOBBY DAY** | ) |
| **Serve:** | ) |
| **London Police Department** | ) |
| **503 S. Main Street** | ) |
| **London, Kentucky 40741** | ) |
| | ) |
| **and** | ) |
| | ) |
| **RANDALL WEDDLE** | ) |
| **In his personal and official** | ) |
| **capacity as Mayor of London, KY** | ) |
| **Serve:** | ) |
| **501 South Main Street** | ) |
| **London, Kentucky 40741** | ) |
| | ) |
| **and** | ) |
| | ) |
| **THE CITY OF LONDON, KY** | ) |
| **Serve:** | ) |
| **501 South Main Street** | ) |
| **London, Kentucky 40741** | ) |
| **Defendants** | ) |

## COMPLAINT AT LAW

**NOW COMES** the Plaintiff, Don Estep, by and through the undersigned counsel of record,

and for his Complaint against the Defendants, Wesley Wolfe, Elbert Riley, Jordan Childers, John

3

Inman, Dylan Messer, James Williams, Noah Ritchie, Troy Truett, Andrew Jackson, Jonathan Jackson, Jamie Sloan, Ryan Jackson, Bobby Day, Randall Weddle in his personal and official capacity as Mayor of London, Kentucky and The City of London, Kentucky hereby states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§ 1983, 1988, and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      This Court has personal jurisdiction over Defendants because they are citizens of an reside in Kentucky and this judicial district.

3.      Venue is proper in this District and Division under 28 U.S.C. 1391(b)(1) and (2) in that the Defendants reside in, and the facts giving rise to this matter arose in, the Eastern District of Kentucky and the London Division.

## PARTIES

4.      The Plaintiff, Don Estep, is a natural person. At all times relevant herein, Plaintiff was a resident and citizen of the United States and of the Commonwealth of Kentucky, City of London, County of Laurel.

5.      Defendant Randall Weddle ("Defendant Weddle") is, and was at all relevant times hereto, Mayor of The City of London, Kentucky. He is a natural person believed to have been a resident of the United States and the Commonwealth of Kentucky, City of London, County of Laurel at all relevant times hereto.

4

6.      Defendant Wesley Wolfe ("Defendant Wolfe") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

7.      Defendant Elbert Riley ("Defendant Riley") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

8.      Defendant Jordan Childers ("Defendant Childers") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

9.      Defendant John Inman ("Defendant Inman") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

10.     Defendant Dylan Messer ("Defendant Messer") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

11.     Defendant James Williams ("Defendant Williams") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

12.     Defendant Noah Ritchie ("Defendant Ritchie") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

13. Defendant Troy Truett ("Defendant Truett") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

14. Defendant Andrew Jackson ("Defendant A. Jackson") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

15. Defendant Jonathan Jackson ("Defendant J. Jackson") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

16. Defendant Jamie Sloan ("Defendant Sloan") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

17. Defendant Ryan Jackson ("Defendant R. Jackson") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

18. Defendant Bobby Day ("Defendant Day") is, and was at all relevant times hereto, a police officer employed by London, Kentucky. He is a natural person believed to been a resident of the United States and the Commonwealth of Kentucky at all relevant times hereto.

19. Defendant The City of London, Kentucky, ("Defendant London") is a municipality organized and existing under and by virtue of the laws and the Constitution of the Commonwealth of Kentucky.

**STATEMENT OF FACTS**

20.   On December 1, 2025, the City of London, Kentucky called and completed a Regular City Council meeting at the London Community Center.

21.   Plaintiff was in attendance at the Meeting with his wife, sitting about two (2) or three (3) rows back from the front.

22.   Plaintiff is a usual attendee of City Council meetings, though he rarely, if ever, speaks out of term during the meetings.

23.   Importantly, there currently exists a political divide in London, Kentucky. The two existing camps are (1) those who are in favor of the current City Council and against the current Mayor, and (2) those who are in favor of the current Mayor and against the current City Council.

24.   Plaintiff is in the first camp, in that he supports the current City Council and opposes the politics and actions of the current Mayor.

25.   During the Meeting, attendees were permitted to stand, cheer, call out of term, and say derogatory comments to the City Council.

26.   During various points during the Meeting, where something good would happen to the City Council, Plaintiff and his wife were routinely the only people applauding.

27.   By contrast, when something positive would occur for Defendant Weddle, Plaintiff and his wife were among the few not applauding.

28.   Near the end of the public comments period of the Meeting, a woman seated behind Plaintiff, believed to be Michelle Day, the wife of acting Chief of Police, Bobby Day ("Mrs. Day") stood from her seat and yelled at the City Council, "If you're so good how come none of your supporters are here tonight?"

29.   It should be noted that, at the time, Plaintiff did now know who Mrs. Day was and had never had a previous encounter with her.

30.     In response to Mrs. Day's taunting, Plaintiff pointed to himself and his wife and indicated that they supported the City Council.

31.     Mrs. Day laughed and mocked Plaintiff and the City Council, remarking how only two (2) supporters were present.

32.     Plaintiff said that the reason other supporters were not there was because they had been bullied by Defendant Weddle's supporters and were afraid to attend City Meetings.

33.     Mrs. Day replied that no one was bullying anybody, to which Plaintiff pointed out that the woman's friend/acquaintance, seated beside her, had been making derogatory statements all evening.

34.     At this point, Mrs. Day became incited, waving her arms around and approaching Plaintiff while calling him a "Motherf*cker."

35.     Plaintiff stood and told Mrs. Day not to touch him. At this point, various police officers, believed to be Defendants Truett, A. Jackson, J. Jackson, Sloan, and R. Jackson, rushed toward and surrounded Plaintiff.

36.     Simultaneously, Defendant Day began to menacingly approach Plaintiff, and had to be physically restrained by other officers on the scene.

37.     Defendant Weddle then, over the microphone, instructed the officers to remove Plaintiff from the Meeting.

38.     Previously during the City Meeting, other people, those who supported Defendant Weddle, had stood up and shouted out of term, yelled derogatory remarks at the City Council and were merely told to quiet down. All of the prior City of London meetings, included this one are streamed live and available for the Court's viewing on the City of London's Facebook Page.

39.     Plaintiff was not afforded such a verbal warning, despite him never having spoken out of term, because he was a supporter of the City Council.

40.     Plaintiff was escorted from the Meeting by Defendants Wolfe, Riley, Childers, Inman, Messer, Williams, and Ritchie, with Defendants Wolfe and Williams grabbing Plaintiff by his arms and dragging him toward the doors to the venue.

41.     As a result of their physical removal, Defendants caused Plaintiff to suffer various bruises and popped his shoulder from its socket twice.

42.     Even though only Defendants Wolfe and Williams physically dragged Plaintiff from the venue, Defendants Riley, Childers, Inman, Messer, Williams, and Ritchie felt it necessary to accompany them, following behind and removing Plaintiff from the venue.

43.     Once outside the venue, Defendants Wolfe and Williams allowed Plaintiff to be free from their grasp, but continued to physically block him from the doorway, despite the fact that Plaintiff's wife was still inside and that he was not attempting re-entry.

44.     At this point, Defendants told Plaintiff to leave the premises, even though he was already outside of the Meeting. Plaintiff informed Defendants that he was waiting on his wife. Despite Plaintiff's words, Defendants instructed Plaintiff to go to his vehicle.

45.     Defendants informed Plaintiff that if he were to stop walking or did not head to his vehicle, he would be immediately arrested.

46.     To note, Plaintiff's wife, on whom he was attempting to wait, had the keys to his vehicle. So he would be unable to leave even if he reached his vehicle.

47.     Defendants then began to intimidate Plaintiff, walking towards him while repeating "go to your car, or go to jail."

9

48.     During this interaction, and instead of plainly informing Plaintiff to proceed to his vehicle, Defendant Wolfe aggressively grabbed Plaintiff's arm and forced it upward at an unnatural angle while pushing Plaintiff away from the building.

49.     For context, Plaintiff is seventy-seven (77) years of age, is a diabetic, has neuropathy which affects both of his feet, and offered no resistance to the removal. He only wanted to wait outside the venue for his wife. These medical conditions, along with his age, provide why Plaintiff may have been moving slowly to his vehicle and demonstrate the utter lack of threat he posed to any of the officers or any other person.

50.     While being removed, Mrs. Day was permitted to follow Plaintiff, all the while calling him a "c*ocksucker," a "piece of sh*t" and other derogatory names. Mrs. Day was never informed by any officers to be quiet or removed from the Meeting, despite her aggressive and threatening behavior in both initially standing and approaching Plaintiff or following behind Plaintiff as he was removed from the Meeting.

51.     Defendant Day followed behind Plaintiff as he was being removed, and had to be repeatedly calmed by other officers, both physically and verbally.

52.     Plaintiff's wife met him at his vehicle and drove him home.

53.     After the Meeting had concluded, Defendant Day came outside the venue, looking for Plaintiff. Defendant Day was informed that Plaintiff had already left.

54.     There have been many previous Council Meeting which have become unruly. However, during such Meetings, no one in support of Defendant Weddle has been removed from the Meeting. Confirmation of Defendant Weddle and his London Police Department can be verified by the Facebook posted online meetings, including a most recent meeting where a City Firefighter, with police watching, pulled a fire alarm, in violation of KRS 519.040, a felony, because the London

10

City Council was conducting a meeting, with legislation Defendant Weddle did not want to see passed.

55.    Defendant Weddle's actions constitute clear view-point discrimination towards Plaintiff and those who are not supportive of Defendant Weddle's actions and/or his politics.

### CLAIMS FOR RELIEF
### COUNT I – 42 U.S.C. § 1983 – First Amendment Violation
*Plaintiff v. Defendant Weddle, in his individual and official capacity and Monell Liability for the same against Defendant London*

56.    Plaintiff hereby incorporates all preceding paragraphs by reference as if fully realleged herein.

57.    The First Amendment provides in relevant part that "Congress shall make no law… abridging the freedom of speech… [or the] right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

58.    Among the long-established rights protected by the First Amendment is "a right to associate for the purpose of engaging in [] activities protected by the First Amendment – speech, assembly, [and] petition for the redress of grievances." *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984).

59.    Moreover, Plaintiff had and has a First Amendment right not to be excluded from a forum that is generally held open to the public. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983).

60.    The City of London, Kentucky's Public Meetings, including the Meeting which occurred on December 1, 2025, are limited public forums. *Id.; Schlegel v. Craft*, 2005 U.S. Dist. LEXIS 16798 (KYWD 2005).

61.     The exclusion of Plaintiff from the December 1, 2025 Meeting was based on his viewpoints regarding Defendant Weddle, known to Defendants because of comments Plaintiff made during the Meeting.

62.     Under clearly established case law, including that set forth in *Schlegel*, a person may not be removed from a "meeting, thus preventing her from exercising her constitutionally-guaranteed right to free expression, when she has not acted disruptively."

63.     Plaintiff's comments at the December 1, 2025 Meeting was an exercise of ordinary speech. His exclusion from the Meeting was an attempt by Defendants to prescribe what "correct" politics should be applied in London and constituted viewpoint discrimination in a limited public forum.

64.     Plaintiff's comments were not disruptive and Plaintiff did not instigate the incident with Mrs. Day, who was a supporter of Defendant Weddle. The rules of the forum were unevenly applied to Plaintiff for being "disruptive," although he was merely defending himself from Mrs. Day's aggression, and not at all applied to Mrs. Day.

65.     Furthermore, Plaintiff's removal and/or directed removal from the December 1, 2025 Meeting was due solely to his having engaged in constitutionally protected speech, including his verbal exchange with Mrs. Day and voicing his support for the City Council.

66.     Such removal would deter a person of ordinary firmness from continuing to engage in that conduct.

67.     The removal of Plaintiff was motivated, at least in part, based on Plaintiff's protected conduct.

68.     The preceding paragraphs constitute violations of clearly established First Amendment rights, both as to viewpoint discrimination conduct in a limited public forum, as well as First Amendment retaliation.

69.    Defendants Weddle, in his individual capacity, and while acting under color of any statute, ordinance, regulation, custom, or usage, and exercising and abusing powers granted to him from the Commonwealth of Kentucky, subjected, or caused to be subjected, the Plaintiff, who is a person within the jurisdiction of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution and United States laws. Defendant is therefore liable to him pursuant to 42 U.S.C. § 1983 under an action at law, suit in equity, or other proper proceeding for redress. They are further liable to the Plaintiff for her reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

70.    Further, Defendant Weddle, acting in an ultimate policy-making role for this issue, as well as his directives to, and approval of, the removal of the Plaintiff from the Meeting, exposed Defendant London to liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Baar v. Jefferson County Bd. of Educ.*, 476 Fed. Appx. 621 (6th Cir. 2012).

71.    These First Amendment/ First Amendment retaliation violations have proximately and actually caused Plaintiff damages, in an amount to be proven at trial, but exceeding $10,000.

72.    Plaintiff further seeks punitive damages against Defendants, since the actions complained of were motivated by evil motive or intent, and/or when it involves reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against Defendants in an amount to be determined at trial.

### COUNT II – 42 U.S.C. § 1983 – Fourth Amendment Violation
*Plaintiff v. Defendants Wolfe, Williams, Weddle and the City of London, Kentucky*

73.    Plaintiff hereby incorporates all preceding paragraphs by reference as if fully realleged herein.

74. The Fourth Amendment of the United States Constitution provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…"

75. Although police officers are privileged to use some degree of physical coercion, such a right does not confer the officer a license to exercise "gratuitous violence." *Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009).

76. Whether force applied is excessive turns on whether the officer exercised objectively reasonable force "in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

77. Such factors to consider include (1) the severity of the alleged crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Phillips v. Blair*, 786 F. App'x 519, 529 (6th Cir. 2019) *citing Graham v. Connor*, 490 U.S. 386, 397 (1989).

78. Plaintiff was physically removed from the City Meeting by Defendants Wolfe and Williams at the directive of Defendant Weddle.

79. Defendants Wolfe and Williams physically grabbed Plaintiff by his arms and dragged him from the Meeting.

80. When told to leave the building and return to his vehicle, Plaintiff complied and did not resist any instruction, rendering the use of force unnecessary.

81. The only time Plaintiff stopped walking to his vehicle was when he informed officers that he wanted to wait for his wife. This was after Plaintiff had left the building and before he was at his vehicle.

14

82. Officers did not permit Plaintiff to wait and got impatient with the speed at which he was walking to his vehicle. Defendant Wolfe, in turn, grabbed Plaintiff's arm and pushed it at an unnatural angle while pushing Plaintiff.

83. Defendants' actions resulted in Plaintiffs' shoulder being popped from its socket twice.

84. At no point was Plaintiff being detained or under arrest and, as previously stated, he did not resist and completely complied.

85. At no point did Plaintiff commit any crime.

86. At no point did Plaintiff pose any threat, immediate or otherwise, towards any person, including officers.

87. At no point was Plaintiff attempting to evade officers or return to the City Meeting.

88. Thus, Defendants Wolfe and Williams' actions in grabbing Plaintiff were unreasonable under the circumstances.

89. Further, Defendant Weddle, acting in an ultimate policy-making role for this issue, as well as his directives to, and approval of, the removal of Plaintiff from the Meeting, exposes him and the City of London, Kentucky to liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Baar v. Jefferson County Bd. of Educ.*, 476 Fed. Appx. 621 (6th Cir. 2012).

90. Qualified immunity only applies to officers whose conduct is not plainly incompetent or who is knowingly violating the law. *Standfield v. City of Lima*, 244 F. Supp. 3d 638, 645 (N.D. Ohio 2017).

91. Defendants do not enjoy qualified immunity in the present case because their actions were plainly incompetent. Plaintiff was an elderly man, not demonstrating aggression, and plainly exiting the Meeting and complying with all instructions.

15

92. There was no gray area, nor need to make a split-second decision. This was a bright line issue which was not followed by Defendants, who decided to physically grab and move Plaintiff, despite no reasonable need to do so.

93. Further, any mistakes of law that Defendants may argue, due to their simple inability to adhere to the Kentucky Supreme Court decisions, Attorney General decisions, and basic statutory law, are not reasonable, and provide them with absolutely no defense since any mistake is not reasonable.

94. Defendants Wolfe, Williams, Weddle and London, under color of any statute, ordinance, regulation, custom, or usage, and exercising and abusing powers granted to them from the Commonwealth of Kentucky, subjected or caused to be subjected, the Plaintiff, who is a person within the jurisdiction of the United States, to be deprived of his rights, privileges, or immunities secured by the Constitution and United States laws. They are therefore liable to him pursuant to 42 U.S.C. 1983 under an action at law, suit in equity, or other proper proceeding for redress. They are further liable to the Plaintiff for her reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

95. These violations have proximately and actually caused Plaintiff damages, in an amount to be proven at trial, but exceeding $10,000.00.

96. Plaintiff further seeks punitive damages against Defendants, since the actions complained of herein were motivated by evil motive or intent, and/or when it involves reckless or callous indifference to the federally protected rights of Plaintiff. Plaintiff demands judgment on these punitive damages against Defendants in an amount to be determined at trial.

## COUNT III - 28 U.S.C. § 1367 – Assault

16

*Plaintiff v. Defendants Wolfe, Williams, Riley, Childers, Inman, Messer, Ritchie, Truett, A. Jackson, J. Jackson, Sloan, and R. Jackson, Day, Weddle, and the City of London, Kentucky*

97.    Plaintiff hereby incorporates all preceding paragraphs by reference as if fully realleged herein.

98.    Pursuant to 28 U.S.C. § 1367, Federal Courts have supplemental jurisdiction over state law claims so long as those claims form the same case or controversy as those over which it may exercise original jurisdiction.

99.    Under Kentucky law, assault requires merely "the threat of unwanted touching of the victim" coupled with intent. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).

100.   Toward the end of the public comment section during the Meeting occurring on December 1, 2025, Defendant Weddle instructed police officers to remove Plaintiff from the building.

101.   Even before this instruction, Defendants Truett, A. Jackson, J. Jackson, Sloan, and R. Jackson rushed towards Plaintiff, while Plaintiff was being berated by Mrs. Day.

102.   At this point, Defendants Truett, A. Jackson, J. Jackson, Sloan and R. Jackson had caused Plaintiff to reasonably fear imminent apprehension of harmful/offensive contact with his person, although only minimal physical contact occurred, if any.

103.   Furthermore, Defendant Day began menacingly approaching Plaintiff, and had to be physically obstructed by other officers, causing Plaintiff to reasonably fear imminent apprehension of harmful/offensive contact with his person, although ultimately no physical contact occurred.

104.   After Defendant Weddle's instruction, Plaintiff was removed from the Meeting by Defendants Wolfe, Riley, Childers, Inman, Messer, Williams, and Ritchie.

17

105. These Defendants crowded Plaintiff as he left, and yelled at Plaintiff, threatening him with arrest if he did not leave the building. All the while, Mrs. Day was permitted to follow Plaintiff close behind, yelling and calling him derogatory names.

106. Defendants Wolfe, Riley, Childers, Inman, Messer, Williams, and Ritchie caused Plaintiff, as he was leaving the building, to reasonably fear imminent apprehension of harmful/offensive contact with his person, although only minimal physical contact occurred, if any.

107. The doctrine of reaspondeat superior exists between a municipal corporation and its officers and employees. *Lexington v. Yank*, 431 S.W.2d 892, 895 (Ky. Ct. App. 1968).

108. Moreover, vicarious liability applies to the principal so long as an agent was acting on behalf of them and at their direction. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003).

109. Defendants believed they were acting in the best interests of the City when removing Plaintiff from the Meeting.

110. Defendants Wolfe, Riley, Childers, Inman, Messer, Williams, Ritchie, Truett, A. Jackson, J. Jackson, Sloan and R. Jackson were all operating in their capacities as officers for the City of London, Kentucky at the time when the assaults occurred.

111. Defendants were further operating pursuant to the orders of Defendant Weddle.

112. As such, Defendants' actions may be imputed to the City of London, Kentucky and to Defendant Weddle.

### COUNT IV – 28 U.S.C. §1367 – Battery
*Plaintiff v. Defendants Wolfe, Williams, Weddle, and the City of London*

113. Plaintiff hereby incorporates all preceding paragraphs by reference as if fully realleged herein.

18

114.  Pursuant to 28 U.S.C. § 1367, Federal Courts have supplemental jurisdiction over state law claims so long as those claims form the same case or controversy as those over which it may exercise original jurisdiction.

115.  Under Kentucky law, battery requires actual unwanted touching, coupled with intent. *Banks*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001).

116.  While being removed from the Meeting, Plaintiff was physically touched by Defendants Wolfe and Williams.

117.  Defendants Wolfe and Williams grabbed Plaintiff by his arms and dragged him from where he was standing by his seat at the Meeting, all the while Mrs. Day was screaming in Plaintiff's face.

118.  Defendants Wolfe and Williams had no legal right to touch Plaintiff and did so at the direction of Defendant Weddle's direct orders.

119.  At the time of the battery, Defendants Wolfe and Williams were working in their capacity as officers of the City of London, Kentucky.

120.  The doctrine of respondeat superior exists between a municipal corporation and its officers and employees. *Lexington v. Yank*, 431 S.W.2d 892, 895 (Ky. Ct. App. 1968).

121.  Moreover, vicarious liability applies to the principal so long as an agent was acting on behalf of them and at their direction. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003).

122.  Defendants Wolfe and Williams believed that they were acting in the best interests of the City of London, Kentucky when physically removing Plaintiff from the Meeting.

123. The actions of Defendants Wolfe and Williams can, therefore, be imputed to Defendant Weddle, on whose behalf and at whose direction they acted, and to the City of London, Kentucky as they were operating in their roles as police officers for the City.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

(a) That this Court issue a declaration that the practices complained of herein by Defendants were and are unconstitutional and illegal;

(b) That Plaintiff be awarded money damages, including both compensatory and punitive damages against Defendants, in an amount to be proven at trial, and exceeding $75,000, exclusive of interests and costs;

(c) That trial by jury be had on all issues so triable;

(d) That Plaintiff be awarded his costs in this action, including reasonable attorney's fees under 42 U.S.C. § 1988.

(e) That Plaintiff be awarded injunctive relief against future exclusions from Meetings based on his viewpoints; and

(f) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

Respectfully submitted,

**/s/ Brandon N. Voelker**
Brandon N. Voelker (KBA #88076)
GATLIN VOELKER, PLLC
50 E. Rivercenter Blvd., Ste. #1275

20

Covington, Kentucky 41011
Phone: (859) 781-9100
bvoelker@gatlinvoelker.com
*Counsel for Plaintiff*

22

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Don Estep, declare under penalty of perjury that I have read the foregoing Verified Complaint and state that the factual statements therein are true and accurate and any documents attached are true and accurate copies of what they purport to be.

Executed on: ___01/19/2026___ .
(Date)

Don Estep